J. H. BRADSHAW v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

**No. 10195.**

DEMURRER TO EVIDENCE—*held improperly sustained in action for negligence.* The evidence in this case is examined and held sufficient to require its submission to the jury, and nothing appears which the court can say as a matter of law defeats the plaintiff's action.

Error from Wabaunsee District Court. Hon. William Thomson, Judge. Opinion filed November 6, 1897. *Reversed.*

*C. A. Starbird* and *David Overmyer*, for plaintiff in error.

*M. A. Low, W. F. Evans* and *J. E. Dolman*, for defendant in error.

ALLEN, J.   Nearly all of the brief for the defendant in error is devoted to a discussion of objections to the sufficiency of the record brought to this court to present the errors complained of.   The same objections were made on a motion to dismiss submitted at the June session of the court and afterwards overruled. We find nothing to lead us to change the conclusion then reached, and do not deem it necessary now to discuss the question disposed of at the time the motion was decided.

Bradshaw brought suit against the Railway Company to recover damages for an injury resulting in the loss of his right hand while employed by the defendant as a pin-puller on a switch engine in its yard at Topeka.   At the trial, it was shown by the testimony of the plaintiff that he had been employed by the defendant Company as a switchman for about eighteen months ; that he performed various duties, being sometimes foreman of the yard, but that on the night of the injury he was a night helper or pin-puller working with a switch engine.   He went to work on the night of September 12 at about seven o'clock.   During the fore part of the night, and in fact until nearly morning, he worked in the north end of the yard, with the engine headed south, and his duties required him to be on the head end of the engine.   Near morning, they went to the south end of the yard and took a string of about ten stock cars, which were coupled to the rear end of the engine. Who made the coupling, the plaintiff said he did not

remember, but thought that he did not. There were four men riding on the foot-board, two of whom were called car-catchers. The stock cars were directed to be "kicked" onto switch number one. The car-catchers got on to the stock cars, and, when the signal was given to the plaintiff to pull the pin which coupled the stock cars to the rear of the engine, he took hold with his left hand of the pin in the Janney coupler on the car, for the purpose of pulling it. The pin pulled hard, and, in order to brace himself, he placed his right hand on the end of a bolt which fastened the casting on the rear end of the tender to which the coupling was made. This casting was a plate fastened to the tender by bolts projecting from it about an inch and held in place by burrs on each bolt. From the face of the casting there were three semicircular projections, with a hole through them for a coupling pin and room between the upper and middle, and middle and lower, projections to insert the end of a link. When the plaintiff pulled out the pin, the Janney coupler slipped past the projections of the casting on the tender and caught and crushed his hand. While this was being done, the engine was moving backward, and continued to push the cars for a distance of eight or ten car lengths before his hand was released. It was then so badly crushed that it was necessary to amputate it. The semicircular projections on the casting attached to the tender extended about six inches from the face of the casting. On this particular engine, at the time of the injury, the middle projection was broken and the lips between the upper and lower projections were worn and battered down. The plaintiff's evidence shows that, if the middle projection had been whole, it would have prevented the coupler from passing back far enough to reach his hand; but the whole front of it being

broken out, the short end of the coupler slipped in between the upper and lower projection far enough to allow the long end to strike his hand. The plaintiff testified that he had never noticed the broken condition of the casting; that the accident occurred at night, and that he had no knowledge, before the accident, of the defect in the appliance. It was shown by another witness that it had been in use in its broken condition for a month or more. At the conclusion of the plaintiff's evidence a demurrer was interposed by the defendant and sustained by the court.

It is not made to appear what view was taken by the trial court. There certainly was ample evidence of neglect on the part of the Company. A defective appliance was in use in connection with one of the most hazardous branches of the Company's business. It had been used in that condition for a sufficient time to enable the Company, in the exercise of reasonable care, to discover the defect. If the court held that the plaintiff was guilty of contributory negligence, there is no such showing as would authorize the court to say, as a matter of law, that contributory negligence was shown. Employees of a railway company are bound to exercise reasonable care for their safety, but they are not bound at their peril to inspect every tool and appliance furnished them, before using it in the ordinary way. There is no evidence showing that the plaintiff knew of the defect before he was injured. Whether he was negligent in failing to discover it, in placing his hand where he did, or in any other particular, is a question for the jury. It cannot be seriously contended that there is any such absurdity in the statements of the plaintiff as to how this injury was received as to make it incredible and authorize the court to reject it as manifestly false. We think there was sufficient evidence to require the sub-

mission of the case to the jury, and that the court erred in sustaining the demurrer.

The judgment is reversed, and the cause remanded for a new trial.